IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-299 T
(Chief Judge Edward J. Damich)

(Consolidated with: No. 05-300 T, No. 05-301 T, No. 05-302 T, No. 05-303 T)

INSTASHRED SECURITY SERVICES, LLC,
by and through ISS ACQUISITIONS, LLC, a
Partner Other Than the Tax Matters Partner

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# JOINT PRELIMINARY STATUS REPORT

Pursuant to the Court's order of May 4, 2005, and Appendix A, Part III, ¶ 4, RCFC, the parties hereby provide this Joint Preliminary Status Report.

(a) Jurisdiction:

**Plaintiffs**:

Plaintiffs contend that this Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1508 and 26 U.S.C. § 6226(b). Under 28 U.S.C. § 1508, the Court of Federal Claims has jurisdiction to hear and render judgment upon any petition under Sections 6226 or 6228 of the Internal Revenue Code of 1986. In the instant consolidated cases, Final Partnership Administrative Adjustments ("FPAAs") were issued by the Internal Revenue Service ("IRS") for the tax year at issue to each of: Instashred Security

Services, LLC; ISS Acquisitions, LLC; ISS Management - D, LLC; ISS Management - T, LLC; and ISS Management - I, LLC. Each of the partnerships, by and through the notice partner (as that term is defined in 26 U.S.C. §6231(a)(8)) filing on behalf of each partnership, filed their respective petitions under 26 U.S.C. § 6226(b). Each of the plaintiff partners pursuant to 26 U.S.C. § 6226(e)(1) timely deposited with the IRS a good faith estimate of their respective tax liability if the FPAA were upheld.

**Defendant**: The proper plaintiffs in these five consolidated cases are the partners filing petitions for readjustment pursuant to 28 U.S.C. § 1508 and 26 U.S.C. § 6226(a or b), and 26 U.S.C. § 6226(e)(1) requires deposits by such partner plaintiffs on or before the day the petitions are filed. Each of the five complaints incorrectly named as plaintiffs the partnership the items of which were adjusted by the IRS. In addition, each complaint may be defective with respect to the required jurisdictional deposit:

No. 05-299T: At this time, defendant lacks information regarding any such payment by the proper plaintiff, ISS Acquisitions LLC;

No. 05-300T: At this time, defendant lacks information regarding any such payment by the proper plaintiff, Thomas Dunlap, although defendant notes that the Internal Revenue Service's transcript of account for ISS Managment-T, LLC, indicates receipt of $30,123 on March 8, 2005;

No. 05-301T: At this time, defendant lacks information regarding any such payment by the proper plaintiff, Donald Thorne, although defendant notes that the Internal Revenue Service's transcript of account for ISS Managment-D, LLC, indicates receipt of $258,662 on March 20, 2005;

No. 05-302T: At this time, defendant lacks information regarding any such payment by the proper plaintiff Issie Rabinovitch;

No. 05-303T: defendant notes that the Internal Revenue Service transcript of account for ISS Management - D, LLC records receipt of $258,662 on March 20, 2005.

The absence of a timely deposit by the proper plaintiff may require dismissal of these actions for lack of jurisdiction. The Court "may by order provide that the jurisdictional requirements [timely deposit of correct amount by partner filing petition for readjustment] ... are satisfied where there has been a good faith attempt to satisfy such requirements and any shortfall in the amount required to be deposited is timely corrected." 26 U.S.C. § 6226(e)(1).

(b) Consolidation:

These cases have already been consolidated by Order of the Court.

(c) Bifurcation of liability and damages:

**Plaintiff**:

Plaintiffs intend to file a formal motion pursuant to RCFC, Rule 42(b), requesting separate trials and discovery of the following issues: (1) the determination of whether the tax positions taken by the IRS in the FPAAs are erroneous, i.e., the substantive tax liability of Plaintiffs; and (2) liability for, and the proper amount of, penalties assessed by the IRS in the FPAAs.

Defendant accurately notes in its statement below that Rule 42(b) authorizes the Court to order separate trials of any separate issue(s) “in furtherance of convenience or

to avoid prejudice." This case presents exactly the circumstances under which separate trials are appropriately ordered under Rule 42(b).

Separate trials on the issues of tax liabilities and penalties are necessary to avoid prejudice to the Plaintiffs. While Plaintiffs were required in their respective Complaints to assert the defense of reliance on the advice of legal and tax professionals (or risk waiving it), this issue becomes relevant only after a trier of fact has determined that Plaintiffs are liable for the taxes allegedly owed. If, however, Plaintiffs prevail on the substantive tax issues, the issue of penalties becomes moot.

The prejudice Plaintiffs assert derives from the fact that the documents, some comprising attorney's work product, contain highly privileged legal analysis, strategies and theories that would reveal aspects of Plaintiffs' trial plans. Courts have recognized that the trial court should give serious consideration to separating trials of substantive issues from penalty issues which derive from such substantive issues. see Quantum Corporation v. Tandon Corporation, 940 F. 2d 642, 643-644 (Fed. Cir. 1991); Kos Pharmaceuticals v. Barr Laboratories, 218 F.R.D. 387 (S.D.N.Y. 2003).

In the present case, Plaintiffs should not be required to make an election of whether to disclose privileged document(s) in advance of a finding that the taxes assessed in the FPAA are in fact owed since: (1) the information in the privileged document(s) is not directly relevant to the issue of the substantive tax liability of Plaintiffs; (2) the privileged document(s) would not otherwise have to be produced by Plaintiffs in connection with the issue of tax liability; (3) disclosure of the privileged information could be unfairly prejudicial to Plaintiffs in connection with the determination

of whether Plaintiffs have a tax liability; and (4) the document(s) are only relevant to the issue of penalties.

In the event that it is determined that Plaintiffs are liable on the substantive tax issues, Plaintiffs may elect at that time to disclose document(s) protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Those document(s) may evidence a complete defense to liability for penalties, or may evidence the proper assessment of a penalty rate lower than that claimed by the IRS in the FPAAs.

Separate trials on the issues of tax liabilities and penalties would further convenience and be conducive to expedition and economy in this case. As set forth above, if no taxes are due, as Plaintiffs contend, there is no liability for penalties, thus rendering the penalties issues moot. This would obviate the need for a significant amount of work on the part of both Plaintiffs and Defendant relating to discovery and trial of the penalties issues. It would be a waste of the Court's and the parties' resources to litigate this issue before it is ripe. If, on the other hand, a determination is made that taxes are owed by Plaintiffs, the parties would be free to proceed with discovery and trial of the issues relating to penalties.

Plaintiffs suggest that bifurcation procedurally take place as follows: (1) Discovery proceeds on all issues concerning the tax liability of Plaintiffs; (2) trial takes place on the issue of the tax liability of Plaintiffs; (3) if a judicial determination is made that Plaintiffs have a tax liability, then Plaintiffs will be prepared to make an election whether to waive the privileges as to privileged document(s); (4) if the Plaintiffs elect to waive the privileges, the document(s) will be immediately produced; (5)

Defendant can seek depositions or other discovery based upon the content of the document(s) that have been produced; and (6) trial will continue on the issue of Plaintiffs' respective liability for penalties.

Defendant's opposition to separate trials for the substantive tax issues and the penalty issues is without merit. As set forth above, bifurcation would result in greater efficiency and judicial economy - not less. Defendant's position that separate trials is not appropriate because that is not what is "routinely ordered" is unpersuasive because this case is not routine. Rather, it is a case in which Plaintiffs' substantive rights would be impaired and their cases prejudiced if separate trials were not ordered because Plaintiffs would be compelled to unnecessarily waive a privilege for a dispute over penalties which is not yet ripe.

Notably, Defendant cites no case in which a request for separate trials of substantive tax liability issues and penalty issues was denied by the Court - much less, denied under factual circumstances similar to those in the present case.

**Defendant**:

Defendant opposes plaintiffs' proposal for separate discovery periods and trials regarding the FPAA adjustments and the applicability of penalties thereto on which plaintiffs' complaints are based. Plaintiffs essentially are moving the Court pursuant to RCFC 42(b) for bifurcation. That rule permits separate trials on any separate issue "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." The advisory notes to FRCP 42(b), which are applicable here, see RCFC 2002 Rules Committee Note, teach that separation of issues "is not to be routinely ordered" unless "experience has demonstrated its worth."

FRCP 42(b) Advisory Committee Notes to 1966 Amendment; see also Wright & Miller, Federal Practice and Procedure: Civil 2d § 2388 at 474 ("The piecemeal trial of separate issues in a single lawsuit ... is not to be the usual course"). Plaintiffs cite no cases in which a tax matter to be tried to the bench was bifurcated between income tax liability and the penalties related thereto, and the Government's initial research has located none. Any decision to separate discovery and trial on these issues should therefore be made after full briefing on the issue, with the burden on plaintiffs to demonstrate why departure from the norm is mandated.

The Government's preliminary research, however, reveals no justification for such an unwarranted departure. Plaintiffs' pattern complaints plead the purpose of the transactions referred to therein to be "certain asset protection and estate planning concerns," Compls. ¶ 12(c), and allege that plaintiffs sought advice from a tax professional prior to engaging in the transactions, made full disclosure of all relevant facts to such person, and reasonably relied on the advice of such person when engaging in the transactions, see id. ¶ 12(, f, g, h). Plaintiffs use similar language in this JPSR, contending that the entities involved in the transactions were formed for legitimate business purposes, that the transactions had economic substance, and that tax professionals were sought and relied upon after being provided with all relevant facts.

Plaintiffs' reliance-on-counsel language tracks and invokes the reasonable cause exception of 26 U.S.C. § 6664(c) and related regulations, see Tr. Reg. §§ 1.6664-4(b)(1), (c)(1), which provide a defense to accuracy related penalties to an underpayment of tax if the taxpayer can show reasonable cause for and good faith with

respect to the underpayment. Plaintiffs' invoking a reliance-on-counsel defense has waived any assertion of attorney-client privilege with respect to advice of counsel received in connection with the subject transactions. See Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162-63 (9th Cir. 1992); In re G-I Holdings, Inc., 218 F.R.D. 428, 430-34 (D.N.J. 2003); Johnson v. Commissioner, 119 T.C. 27, 33-41 (2002). Plaintiffs therefore will not be required to elect to disclose privileged materials for they have already so elected. There is thus no RCFC 42(b) prejudice of plaintiffs against which to be guarded.

In addition, bifurcation would promote waste, inefficiency, and injustice by promulgating redundant and duplicative discovery and prejudicing the Government's case. One of the major issues in this case related to both the FRAA adjustments and applicable penalties is whether the plaintiffs had any legitimate non-tax purpose for entering the subject transactions. Such inquiry requires investigation into their subjective business motivation, including what tax considerations were weighed against non-tax considerations. Plaintiffs' alleged reliance on the advice of tax professionals prior to and while engaging in the subject transactions will surely be shown by discovery to form part of the calculus made by plaintiffs when deciding to go forward with the transactions and attendantly part and parcel of their motivation for doing so. This is particularly true here where the transactions at issue appear to have been products sold with draft pattern tax opinions included. Such evidence will impact both the subjective business purpose prong of economic substance analysis relevant to the FPAA adjustments (and application of penalties thereto) and the analysis of plaintiffs' pleaded reasonable cause good faith defense to accuracy related penalties. Bifurcating

discovery and trial for adjustments and applicable penalties and/or plaintiffs' pleaded reasonable cause defense therefore will not only require duplicative depositions of plaintiffs and their representatives but also prejudice the Government's ability to examine plaintiffs' business purpose.

(d) (1) Deferral of Proceedings:

**Plaintiffs**:

Plaintiffs are without sufficient information to know whether it is appropriate at this time to seek a stay of this civil proceeding. Other than the vague statement by the IRS set forth below regarding the pendency of some type of criminal investigation, Plaintiffs have no knowledge of whether Plaintiffs are the focus of a criminal investigation, or of the nature or scope of the criminal investigation of the transactions that are at issue in this action. To the extent that additional information may become available through discovery or otherwise, Plaintiffs reserve the right to seek a stay of this action.

Plaintiffs contend that, to the extent the IRS' criminal file contains information relevant to the subject matter of this action, or information that is likely to lead to the discovery of admissible evidence, such materials are not privileged, or that Plaintiffs' legitimate need to access to such information in this action in order to have a full and fair trial supercedes any qualified privilege that might apply since such information is not available to Plaintiffs from any other source. Defendant has yet to provide Plaintiffs with any authority for the claim of privilege as to Defendant's "criminal file".

**Defendant**:

The Office of the United States Attorney for the Southern District of New York has a pending criminal investigation with respect to these transactions. That office has asked that it be kept apprised of any discovery in this action in order to ensure that this action does not adversely affect its pending criminal investigations. In the event that it does, the United States anticipates that it will seek either a protective order, or other such relief, including a stay if necessary, to protect the important interests of law enforcement. Counsel for the United States has notified petitioners that, in addition to Rule 6(e) of the Federal Rules of Criminal Procedure which protects grand jury information, the IRS criminal files are also privileged and not subject to discovery at this time.

(2) Transfer/Remand/Related Cases:

By order dated May 17, 2005, the Court denied the defendant's request to transfer to the Court or consolidate with these cases MIPW I Acquisitions, LLC, v. United States, Docket No. 05-304 T.

**Plaintiffs**: Plaintiffs contend that their consolidated cases are unrelated to any such other cases and that it would be inappropriate to link them by coordinated discovery or any other means.

**Defendant**: In addition to MIPW in the Court of Federal Claims, there are additional docketed cases involving similar transactions before the Northern District of California. Defendant contends that there are also newly docketed cases involving similar transactions before other judges of the Court of Federal Claims, 05-785T through 05-792T (filed by plaintiffs' counsel) and a docketed case involving similar

transactions before the Tax Court. It is Defendant's understanding that many similar transactions currently are under review and/or audit by the Internal Revenue Service which may result in many more additional cases being filed in these or other courts within the next year.

Defendant contends that the similarity of these various cases suggest that coordinated discovery may prove useful for all or some of these current or future cases.

(e) Remand or suspension:

**Plaintiffs**:

Plaintiffs contend that there is no basis for remanding these consolidated actions. Depending on what occurs in the criminal investigation, Plaintiffs may find it necessary to seek leave of court to suspend this action.

**Defendant**:

There is no basis for remand, but a future need to suspend this case is possible due to the criminal investigation described in paragraph (d) above.

(f) Additional parties:

The parties know of no additional parties to be joined.

(g) Dispositive motions: The parties do not intend to file dispositive motions at this time.

(h) Factual and Legal Issues:

**Plaintiffs**:

Instashred Security Services, LLC, a Delaware limited liability company ("Instashred"), was a document shredding business. Approximately 85% of Instashred

was owned by Instashred Security Services, Inc. ("S Corp"). The remaining interest of Instashred was owned by US Shred, Inc.

In 2000, ISS Acquisitions, LLC, a Delaware limited liability company ("Acquisitions"), was formed. The original members of Acquisitions were S Corp, Donald Thorne, Thomas Dunlap, and Issie Rabinovitch. In connection with the formation and capitalization of Acquisitions, S Corp contributed its ownership interest in Instashred to Acquisitions.

Later in 2000, Acquisitions redeemed a portion of S Corp's member interest in Acquisitions. In exchange for that redemption, Acquisitions executed a non-negotiable promissory note in favor of S Corp in the amount of the fair market value of S Corp's member interest in Acquisitions.

During 2000, Donald Thorne, Thomas Dunlap and Issie Rabinovitch each contributed their respective member interests in Acquisitions to ISS Management - D, LLC, a Delaware limited liability company; ISS Management - T, LLC, Delaware limited liability company; and ISS Management - I, LLC, a Delaware limited liability company; respectively. A proportional share of S Corp's remaining ownership interest in Acquisitions was purchased by each of the ISS Management entities.

Also during 2000, Acquisitions and each of the ISS Management entities made an election under Internal Revenue Code Section 754 and adjusted the tax basis of their assets as required thereunder.

Later, Acquisitions sold all of its assets to Recall Total Information Management, Inc., a Delaware corporation. Acquisitions was then dissolved and terminated.

Each of the entities involved in the transactions were formed and existed for legitimate business purposes. Each of the transactions entered into by the entities had economic substance and were entered into for legitimate business purposes.

In connection with engaging in the transactions referenced above, Plaintiffs sought and justifiably relied upon the advice of legal and tax professionals. The tax professional was provided with and had knowledge of all the relevant facts of the proposed transactions. As a result, even if it were to be determined that taxes are owed by the Plaintiffs, Plaintiffs should not be subject to the penalties sought by Defendant.

Plaintiffs dispute the contentions set forth in Defendant's statement below. The transactions at issue in this case do not constitute an "abusive tax shelter scheme," but rather constitute legitimate transactions within the provisions of the tax code that achieved several purposes, among them certain asset protection and estate planning goals. Defendant's positions taken in the FPAAs and described in general below, including but not limited to, the contentions that the non-negotiable promissory notes at issue did not constitute liabilities of the partnership, and that the economic substance/sham transaction doctrine and step transaction doctrine provide grounds for disregarding the step-up in basis, are erroneous and ignore the factual and legal merits of Plaintiffs' respective tax positions.

**Defendant**:[1]

This case concerns an abusive tax shelter scheme designed to avoid federal income taxes with respect to capital gains realized upon the sale of the assets of a paper shredding business based in Newport Beach, California. The amount of capital gain at issue is approximately $60 million.

Instashred Security Services, LLC (ISS LLC) owned and operated the paper shredding business after ISS LLC's formation in 1999. ISS LLC's initial members were ISS, Inc. (88%) and U.S. Shred (12%). According to ISS LLC's filed tax returns for 2000 and 2001, ownership interests allegedly changed. In addition to ISS Inc. and U.S. Shred**,** three LLCs and ten individuals are reported as allegedly holding interests during these years.

ISS Inc. was an "S" corporation for federal income tax purposes which means it was a pass-through entity; i.e., it incurred no liability for income taxes at the corporate level. It was formed in 1991. The three owners of ISS, Inc., Issie Rabinovich, Donald Thorne, and Thomas Dunlap, allegedly commenced a series of transactions in the year 2000 designed to transfer the appreciated assets of ISS Inc. to ISS LLC and to avoid capital gains taxes on their share of the gain realized upon the eventual sale of the assets of ISS LLC to an unrelated third party. The actual sale of the assets to the unrelated third party occurred in January 2001. The buyer appears to have been Recall Secure Destruction Services, Inc. (Recall), a wholly owned subsidiary of Recall

[1] Factual statements made by defendant in subsection (h) are based on United States' initial investigation and are not meant to waive subsequent assertions, informed by full discovery and opportunity for full review of this case, that the facts set forth in such statements are not true or did not occur, for example, because of transactional defects.

Total Information Management, in turn a wholly owed subsidiary of the Australian company, Brambles Industries Limited.

The factual issues in this litigation concern the series of purported transactions undertaken by ISS Inc., Rabinovitch, Thorne, and Dunlap. These included the formation of ISS Acquisitions, LLC, ISS Management-T, ISS Management-I, ISS Management-D, ISS Acquisitions II, LLC, ISS Holdings-I,LLC, ISS Holdings-T, LLC, and ISS Holdings, LLC. The government needs to examine the purported formation of these entities–and all the documents related thereto–and their purported activities, if any, during 2000 and 2001. Principal among the purported activities is the issuance of non-negotiable promissory notes totalling approximately $64 million. The government is also interested in the origins of these purported transactions, including any legal and accounting advice. The government also needs to examine the transaction between ISS LLC and its buyer, Recall.

There are many legal issues in this case. The IRS issued Notices of Final Partnership Administrative Adjustment (FPAA) to five entities involved in these purported transactions, i.e., (1) ISS, LLC, (2) ISS Management-T, LLC, (3) ISS Management-D, (4) ISS Management-I, and (5) ISS Management Acquisitions I, each of which are attached as exhibits to the complaints. The legal reasoning of the IRS is also described in the FPAAs. Particular adjustments to each entities' tax returns are set forth in the individual FPAAs. These determinations are presumptively correct and the burden of proof to reverse any of these determinations rests with the plaintiffs. This action, like a tax refund suit, is a de novo proceeding and the government may raise any additional legal arguments to support the IRS determinations.

The more significant determinations found in the FPAAs relate to the tax shelter scheme's attempt to invoke several provisions of the Internal Revenue Code to claim an increase in basis of the property to be sold in the year prior to the actual sale. Principal among these are Sections 754, 752**,** 743(b), and 734, and the regulations thereunder. An increase in the basis of the property at issue was claimed in 2000 following the purported transactions initiated by Rabinovitch, Thorne, and Dunlap, allegedly pursuant to these code sections and the regulations.

The Internal Revenue Service determined, <u>inter alia</u>, that the claimed increase in basis for the property in 2000 was not valid, as a matter of law, under several legal theories. Among these is the determination that the non-negotiable promissory notes did not constitute 'liabilities of the partnership" and therefore cannot be used to increase basis. Furthermore, the IRS determined that certain judicial doctrines, i.e., economic substance/sham transaction and the step transaction, also provided legal justification for disregarding the alleged basis step-up.

The IRS also determined that expenses claimed with respect to these alleged transactions are not deductible or amortizable under §§ 162, 212 or 709(b).

In addition, the IRS invoked the "anti-abuse" regulation of Treas. Reg. § 1. 701-2 in order to disallow the basis increase sought here on the ground that the transactions were engaged in for the principal purpose of reducing the Federal tax liability in a manner inconsistent with the intent of Subchapter K of the Internal Revenue Code.

The Internal Revenue Service also determined civil penalties under Section 6662 are appropriate, either at the 40% rate for gross valuation misstatement or at the 20% rate for negligence or substantial understatement of income tax.

(i) ADR:

**Plaintiffs**:

Plaintiffs believe that all cases are amenable to some type of ADR. Plaintiffs believe that Defendant is unreasonably taking the position that all tax cases that it contends are "related," regardless of the different factual situations between them, should be lumped together, treated alike, and that settlement in one is not possible unless there were a settlement in all. This position ignores the reality that this is not a class action, each case is factually distinct, and each should be litigated as a separate action by the government. Plaintiff believes that the government should not just issue a blanket proclamation that all such cases are not amenable to ADR.

**Defendant**:

Defendant does not believe that ADR is viable for these consolidated cases. Plaintiff's rendition of the government's position on ADR is not accurate. In the defendant's view, these consolidated cases involve an abusive tax shelter product that is also currently at issue in 17 docketed cases in this Court, the Northern District of California, and the Tax Court. Many more cases are being processed within the Internal Revenue Service and may result in an additional 20 to 30 cases in litigation. The government's concern with the proliferation of abusive tax shelters is a common topic in the popular business press. The fact that the government is properly coordinating its efforts to confront this abusive tax shelter scheme should not surprise any litigant. As the government had no knowledge of the transactions at issue while they took place--unlike a government contracts case--extensive discovery of this case is necessary. A full elucidation of the facts and motivations of the individuals participating in the

particular transactions at issue in this case are necessary. ADR techniques, in the government's view, would not be helpful in reaching a just result here - - certainly not at this early date, when the Government's attorneys have not yet developed the facts of the case. Defendant has no categorical opposition to using ADR, and in fact ADR has been successfully employed in a small number of tax cases in this court. However, as the Court is aware, the Tax Division has an excellent record of settling cases that should be settled without resort to ADR techniques. If there is an opportunity to settle this case before commencing trial, the Tax Division will pursue that opportunity as it always does.

(1) U.S. Court of Federal Claims ADR Program:

**Plaintiffs**:

Plaintiffs are amenable to the use of either a settlement judge or a third-party neutral to facilitate a resolution of these consolidated cases.

**Defendant**:

In the Defendant's view, none of the three vehicles used by the Court's program (settlement judge, mini-trial, or third-party neutrals) would be useful in these complex consolidated tax shelter cases–especially because of the precedential importance of these cases for the similar cases to follow. The government's position is that this is an abusive tax shelter which, inter alia, lacks any economic substance and/or is without any business purpose other than tax evasion. The participants in this shelter scheme should be held responsible for unpaid taxes and penalties, as described in the FPAAs accompanying the complaints at issue.

(2) Other Means of ADR:

**Plaintiffs**:

Plaintiffs are open to any means of ADR that could lead to an equitable resolution of this dispute. Plaintiffs, however, do not see how this could be feasible in light of Defendant's rigid position.

**Defendant**:

None of the other ADR methods described in the Court's May 4, 2005, order would be helpful in these complex consolidated tax shelter cases.

(a) Bifurcated Trial:

**Plaintiff**:

Plaintiffs recommend bifurcation as described above.

**Defendant**:

As noted above, there are no distinct "liability" or "damages" issues to bifurcate.

(2) Limited Discovery:

**Plaintiffs**:

Plaintiffs believe that full discovery, subject to the bifurcation of the substantive tax issues from the penalty issues, is necessary so that Defendant can appreciate the legitimacy of the tax positions taken by Plaintiffs. In the absence of a desire by Defendant to resolve this matter without a trial, limiting discovery for ADR purposes would be meaningless.

**Defendant**:

Full discovery is required for these complex consolidated tax shelter cases to set forth clearly for the Court the activities undertaken in this tax shelter scheme.

(3) Court-Appointed Experts/Neutral Fact-Finders:

**Plaintiffs**:

Plaintiffs contend that the tax positions at issue were fully supported by the law at the time they were entered into. Plaintiffs believe that a court-appointed expert or neutral fact-finder might be useful in demonstrating to the IRS that the positions taken by Plaintiffs were lawful.

**Defendant**:

Tax shelters are not among the types of cases suggested susceptible to this method; the complexity here is focused on multiple transactions rather than issues which may be involved in patent, "takings," or government contract cases.

(4) Arbitration:

**Plaintiffs**:

Plaintiffs do not wish to relinquish their right to a trial on the merits before the Court of Federal Claims.

**Defendant**:

This case is not susceptible to presentation in an abbreviated fashion, much like a "mini-trial."

(5) Mediation:

**Plaintiffs**:

Plaintiffs are amenable to participating in mediation.

**Defendant**:

A tax shelter case is not susceptible to intervention by a neutral third party.

(6) Paper Trial:

There seems to be no efficiencies to gain in attempting to portray this complex tax shelter scheme by paper filings in lieu of direct and cross examination of witnesses.

(j) Joint Proposed Scheduling Plan:

Pursuant to the Court's order of May 4, 2005, the parties provide the following proposed scheduling plan:

(i) Joinder of Additional Parties:

None anticipated.

(ii) Discovery Plan:

(i) **Plaintiffs**: Plaintiffs have agreed to coordinate in preparing and submitting this Joint Preliminary Status Report earlier than the deadline of August 12, 2005, to accommodate the schedule of counsel for Defendant. Plaintiffs are still preparing their initial disclosures and will serve such disclosures on or before August 12, 2005, the date on which they would have otherwise been due.

**Defendant**: Defendant has made its initial disclosures to Plaintiffs.

(ii) Dispositive motion after limited discovery:

Unlikely.

(iii) Phased or limited discovery.

**Plaintiffs**:

As set forth earlier by Plaintiffs, discovery on the issue of tax liability should be completed. If a finding of tax liability is made, then discovery should commence on the penalties issue.

**Defendant**:

Discovery should proceed on all issues simultaneously;

(iv) Close of fact discovery: August 1, 2006;

(v) Proposed dates for status conference after close of fact discovery:

(a) August 15, 2006, 2 p.m.;

(b) August 22, 2006, 2 p.m.;

(c) August 29, 2006, 2 p.m.;

(vi) Motion for summary judgment:

(a) May 15, 2007

(b+c)

**Plaintiff**:

Until discovery is completed, Plaintiffs are unable to determine the grounds upon which a motion for summary judgment could be based. If during discovery, as Plaintiffs expect, Defendant acknowledges, admits or stipulates to certain facts, a motion for summary judgment, or summary adjudication of the legal consequences resulting from such facts may be appropriately brought to resolve the case or certain issues in favor of Plaintiffs. For example, discovery will reveal uncontroverted facts showing that the non-

negotiable promissory notes represent legitimate and bona fide obligations of the makers of such notes and that the non-tax consequences of the transactions support legitimate business purposes, therefore, the case may be properly resolved by way of a motion for summary judgment. Plaintiffs contend that in the event that certain facts become uncontroverted through discovery, a motion for summary judgment or summary adjudication may be properly brought prior to expert discovery.

**Defendant**:

Without aid of discovery, it is difficult for Defendant to predict the exact theory on which a motion for summary judgment will be based. There are many possibilities. For example, discovery may reveal that plaintiffs' evidence as a matter of law is insufficient to sustain their burden of proof to show that their alleged liabilities were real or that transactions they allege occurred. In such instance, a summary judgment motion could be based on sham in fact doctrine or failure to comply with 26 U.S.C. § 752(a). Another example: Discovery may reveal such objective lack of economic substance in plaintiffs' transactions that a motion for summary judgment would be appropriate on that basis with respect to plaintiffs' tax liability and possibly assessed penalties as well. Expert discovery should probably be concluded prior to any summary judgment motion as expert testimony will likely inform the motion. For example, an expert can speak to a transaction's objective economic substance.

(vii) Expert discovery

(a) Identification of plaintiffs' experts and presentation of reports: On or before July 15, 2006

(b) Depositions of plaintiffs' experts:

On or before September 15, 2006

(c) Identification of defendant's experts and presentation of reports:

On or before October 15, 2006

(d) Depositions of defendant's experts:

On or before December 15, 2006

(e) Disclosure of any rebuttal reports:

On or before February 1, 2007

(f) Depositions of any rebuttal experts or reports:

On or before March 15, 2007

(viii) Close of expert discovery

March 15, 2007

(ix) Limits on depositions and interrogatories:

**Plaintiffs**:

Plaintiffs contend that the statutory limit of 10 depositions per side without written stipulation as set forth in RCFC Rule 30 is appropriate. Plaintiffs would be willing to consider additional depositions upon a specific factual showing by Defendant that such depositions are reasonably necessary under the circumstances and are not instead being sought as an abusive litigation tactic. To date, however, Defendant has only made vague generalizations without providing any factual support for why more than 10 depositions per side are necessary.

**Defendant**:

The presumptive limit of five (5) depositions and 25 interrogatories is too few for these consolidated cases. For example, more than five (5) individuals are named as participants in the numerous entities formed to carry out this tax shelter scheme. The defendant requests a limit of 25 depositions and 50 interrogatories.

(x) No physical or mental examinations of parties are anticipated.

(xi) Closure of all discovery is expected by March 15, 2007.

iii. Earliest Trial Date

July, 2007

iv. Length of Trial

14 days (entire case)

v. Requested Place of Trial

**Plaintiffs**: Los Angeles, California

**Defendant**: No request

(k) This case was designated an electronic case on June 27, 2005

(l) An Early Meeting of Counsel was held on August 1, 2005

26(a)(1) Disclosures:

**Plaintiffs**: Plaintiffs have agreed to coordinate in preparing and submitting this Joint Preliminary Status Report earlier than the deadline of August 12, 2005, to accommodate the schedule of counsel for Defendant. Plaintiffs

are still preparing their initial disclosures and will serve such disclosures on or before August 12, 2005, the date on which they would have otherwise been due.

**Defendant**: via overnight mail on 08/02/2005

Anticipated Litigation Costs:

**Plaintiffs**:

Unknown fully at this time, but in light of the amount of discovery that Defendant claims it intends to seek, costs to plaintiffs are anticipated to meet or exceed: (1) $85,000.00 through the end of discovery; (2) an additional $40,000.00 through the end of trial; and (3) an additional $15,000.00 through any appeal. Counsel for Plaintiffs has informed Plaintiffs of such anticipated costs.

**Defendant**:

Not less than $500,000 for the completion of this case.

Proposed Dates for Status Conference: The parties propose the following dates and times for a telephonic status conference following the filing of this status report:

August 22, 2005 at 2:00 p.m., EDT

August 23, 2005 at 2:00 p.m., EDT

August 24, 2005 at 2:00 p.m., EDT

Respectfully submitted,

8/5/2005
Date

s/Morgan R. Evans
MORGAN R. EVANS
Goddard LLP
18500 von Karman Ave., Suite 400
Irvine, California 92612
(949) 253-0500

Counsel for Plaintiff

8/5/2005
Date

s/ Robert J. Higgins
ROBERT J. HIGGINS
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6580

EILEEN J. O'CONNOR
Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section
DAVID GUSTAFSON
Assistant Chief, Court of Federal Claims Section

8/5/2005
Date

s/David Gustafson
Of Counsel

Attorneys for Defendant